JENNIE V. BUNNELL, Respondent, *against* ISAAC STERN
*et al.*, Appellants.

(Decided January 3d, 1888.)

Plaintiff, while in defendants' store for the purpose of purchasing a
cloak, wishing to try on a cloak which she had selected, and fearing
a draught, stepped into another department with the salesman, where
she laid her own cloak on a counter intended for the exhibition and
sale of goods, behind which there was a clerk waiting on customers,
whose attention was not called by plaintiff to the cloak. She stepped
a few feet away to the mirror, tried on the selected cloak, examined
and purchased it, and returned to the counter for her own cloak, but it
was gone. Defendants had floorwalkers and a detective in that part
of their store, part of whose duties it was to see that nothing was
stolen from the store. They endeavored to find the missing garment,
without avail. *Held,* that there was no bailment, as the cloak was not
delivered to or accepted by any one in defendants' employ; and even
if there was a constructive deposit, it was a mere gratuitous bailment
for the bailor's benefit, and, there being no gross negligence or fraud,
plaintiff could not recover.

APPEAL from a judgment of the District Court in the
City of New York for the Seventh Judicial District.

The facts are stated in the opinion.

*M. S. Isaac,* for appellants.

*L. B. Bunnell,* for respondent.

BOOKSTAVER, J. — The action was brought to recover
the value of a cloak, lost by plaintiff while shopping in de-
fendants' store. She had gone into the store for the pur-
pose of buying a cloak or wrap. After looking at several in
the department where they were, she took hers off, to try
on one she had selected, but feeling a draft there, she was
shown into another department, plaintiff carrying her own
cloak, and the clerk, the new garment. When in the other
department plaintiff placed hers on a counter intended for

the exhibition and sale of goods. At the time, a clerk was behind this counter, engaged in her ordinary duties of waiting on customers. Plaintiff did not call the attention of the clerk to her cloak, nor ask permission to leave it there. There were forms for the exhibition of garments near, but it is in dispute whether or not there were chairs, on which plaintiff's cloak might have been put; the testimony does not show that there was any place specially provided for leaving garments while trying on new ones. After leaving her cloak on the counter, plaintiff walked about eight feet away, to a mirror, where she put on the selected garment and examined it. Within five minutes, she concluded to buy the new wrap, and returned to the counter for hers; but it was gone.

The defendants had three floorwalkers on that floor, a part of whose duty it was to see that nothing was stolen from the establishment; they also had a detective for the same purpose. One of the floorwalkers and the detective, with the clerks, endeavored to find the missing cloak, but without avail, and the supposition is that it was stolen. On this state of facts, the justice found a verdict for plaintiff.

Such a result can only be sustained on the theory that the defendants owed some duty to the plaintiff respecting the custody of her cloak, which they failed to perform.

It is clear such a duty could not have arisen, until the plaintiff had, in some way, parted with, and the defendants had assumed the custody. Even an innkeeper is not liable for property left in his inn by one not a guest; nor is he responsible to his guest for property never in his actual or constructive custody (*Grinnell* v. *Cook*, 3 Hill 485; *Gastenhofer* v. *Clair*, 10 Daly 265). Nor is a common carrier of passengers liable to the latter for articles of clothing left in the seats of an ordinary railway carriage, without being actually delivered to the care of the carrier's servants (*Town* v. *Utica & Schenectady R. Co.*, 7 Hill 47). A different rule has been laid down in some of the states, in respect to articles of clothing, etc., left in parlor coaches where an extra compensation has been paid for the accommodation

furnished; but even in respect to these coaches, it has been held that if the article is left in an exposed place, the carrier will be relieved from liability (*Whitney* v. *Palace Car Co.*, 9 Northeast. Rep'r 619).

In this case, the plaintiff certainly kept the possession of her cloak, until she voluntarily left it on a counter intended for the exhibition and sale of goods, and then she did not call the attention of defendants' servants to the fact, nor did any of them take charge of it; so that even under the strict rules applied to innkeepers and common carriers, it is extremely doubtful whether this action would lie. But such rules have never been applied to shopkeepers. The defendants' liability, if any, must be found in the law governing bailments.

In order to constitute a bailment, there must be a person to make the bailment, a person to whom the bailment is made; and the actual or constructive acceptance by the latter of the thing bailed, in trust to be safely delivered to the bailor on demand (Schouler on Bailments 40; Story on Bailments §§ 44, 59, 60, 156, etc.). The duties and responsibilities of a bailee cannot be thrust upon one without his knowledge and against his consent. They must be voluntarily assumed by the party to be charged or his agents duly authorized (*First Nat. Bank* v. *Ocean Nat. Bank*, 60 N. Y. 278; Story on Bailments § 60).

In this case there was no actual, and we think, there was no constructive acceptance of the care of plaintiff's property by defendants, and consequently no bailment.

But granting that the mere laying of the cloak on the counter without bringing the fact to the attention of defendants' servants was a constructive deposit, it was for the benefit of the bailor alone, and constituted a gratuitous bailment only; and there could be no recovery without proving gross negligence or fraud (Edwards on Bailments § 43; Story on Bailments §§ 68, 72; *Hillis* v. *R. Co.*, 33 Northwest. Rep'r 643). No such proof was offered in this case. While the defendants showed that they had floor-walkers on that floor, and, as far as appears, the same care

and general oversight was taken of plaintiff's cloak as was taken of their own goods.

Plaintiff contends that the general invitation extended to all to enter their store and deal with defendants, and the readiness on their part to allow her to take off her own cloak and try on a new article, coupled with the expected sale of the same and the plaintiff's determination to buy it, constituted both an invitation to take off her cloak, and a valuable consideration for its care.

It is difficult to perceive how a mere hope to make a profit on the sale of a garment, without providing specially for the custody of the article removed, makes a valuable consideration for such care.  And it cannot be contended that the profit which would have been made on such sale was the consideration; for if there had been no sale, there would plainly have been no consideration; and thus, for precisely the same acts on the part of the defendants, directly opposite results would follow, depending on the event of the negotiations or the whim of the customer. This cannot be the case.

In *Carpenter* v. *Taylor* (1 Hilt. 193) it was held by this court that a restaurant keeper was not liable for articles left in or stolen from his restaurant, although it must be presumed that the keeper made a profit on what he sold.

In *Rea* v. *Simmons* (141 Mass. 561) the plaintiff went into a clothing store to buy a suit of clothes.  He was directed to a closet where he could try on the suit, and leave his own until it could be ascertained whether it fitted. He left his clothing in the place designated, while he returned to see whether the garments fitted.  After he had done so, he went back to the closet to put on his own clothing, and found that his watch and pocket-book had been stolen.  In that case, the facts were much stronger than in this; and yet it was held that no such negligence was shown, on the part of the shopkeeper, as entitled the customer to recover.

In the case under consideration, the negligence, if any, was on the part of the plaintiff, in leaving her property on a

counter not intended for such purpose, but for the sale of goods; and that, without calling the clerk's attention to the fact. It would be unreasonable to hold the defendants responsible for the neglect of care of property which was never knowingly in their possession, and concerning which they never assumed any relation of trust or duty.

We do not, at this time, intend to decide whether or not it would have been within the sphere of the clerk's employment to have taken charge of the plaintiff's property, even if left with her, so as to render her principals responsible for it, in the event of its loss. Nor do we intend to pass upon the question of the liability of the principals, if the deposit of the property, where it was placed, had been called to the attention of the clerk; as it is not necessary to the decision of this case.

The judgment must be reversed and a new trial ordered; and, under the stipulation, disbursements of appeal only allowed to appellant.

VAN HOESEN, J., concurred.

Judgment reversed and new trial ordered, with disbursements of appeal.