JENNIE V. BUNNELL, Appellant, *v.* ISAAC STERN et al.,
Respondents.

In an action to recover for the loss of a cloak and other articles left in
defendants' care, it appeared that defendants were the proprietors of a
retail store in which there was a department for the sale of ready-made
cloaks, which was provided with mirrors for the use of customers in
trying them on. Plaintiff took off her cloak and, there being no other
place to put it, laid it on a counter directly in front of a clerk and near
a mirror in front of which the clerk, who was waiting upon her, stood
with one of defendants' cloaks to have her try it on, which she did.
She did not ask and was not told where to put her cloak; the clerk
who was waiting upon her, and the one at the counter observed her as
she laid it down, but neither said anything. After trying on the cloak,
plaintiff went to get her own, but it could not be found, although careful
search was made for it. It appeared that no instructions had been
given by defendants to their clerks as to the disposition of garments
removed by customers in order to try on those offered for sale. *Held,*
that defendants, as voluntary custodians for profit to themselves, were
bound to use some care for plaintiff's property, which she had laid aside,
by their implied invitation; that the evidence showed an omission to
exercise this care, and so, that they were properly held liable.
*Carpenter* v. *Taylor* (1 Hilt. 193); *Rea* v. *Simmons* (141 Mass. 561); *Whitney*
v. *Pullman Palace Car Co.* (9 N. E. Rep. 619), distinguished.

(Argued October 24, 1890; decided December 2, 1890.)

APPEAL from order of the General Term of the Court of
Common Pleas of the city and county of New York, made
January 3, 1888, which reversed a judgment of the District
Court of said city in favor of plaintiff and ordered a new
trial.

The complaint as indorsed upon the summons is as follows,
viz. : " Damages by reason of negligence of defendants," but,
as elsewhere stated in the appeal book, it was in these words :
" Loss of a cloak and other articles left in the care of defend-
ants while the plaintiff was being fitted to a wrap." The
answer was a general denial.

The justice, before whom the cause was tried without a jury,
rendered a judgment in favor of the plaintiff for $50 and costs.

Upon appeal to the General Term, this judgment was at first affirmed, but after a reargument, it was reversed and leave given to appeal to this court.

The facts, so far as material, are stated in the opinion.

*L. B. Bunnell* for appellant. The transaction which took place between the parties partook somewhat of a species of bailment contained in the familiar expression *do ut des.* (Jones on Bailments, 49 ; *McCollins* v. *Reed,* 16 Wkly. Notes, 287 ; *Gardner* v. *P. P. C. Co.,* 14 id. 17.)

*Adolph L. Sanger* for respondents. The cloak was not delivered to or accepted by the defendants or their clerks ; there being no delivery there was no *depositum.* (Schouler on Bail. 4, 40 ; Story on Bail. §§ 44, 59, 60, 156, 157 ; *Lethbridge* v. *Phillips,* 2 Stark. 544 ; *Merriam* v. *R. R. Co.,* 20 Conn. 354 ; Pars. on Cont. 180 ; *Tower* v. *U. R. R. Co.,* 7 Hill, 47 ; *Carpenter* v. *Taylor,* 1 Hilt. 193 ; *F. N. Bank* v. *O. N. Bank,* 60 N. Y. 278.) Conceding, for the sake of argument, that there was a gratuitous deposit in the case at bar, appellant has proved no negligence on respondents' part, which is essential to a recovery by the appellant. (*Edson* v. *Weston,* 7 Cow. 278 ; *T. Co.* v. *Mungor,* 5 Den. 267 ; *Lamb* v. *C. & A. Co.,* 46 N. Y. 279 ; Edwards on Bail. §§ 6, 43 ; Story on Bail. §§ 68–72 ; *Hillis* v. *R. R. Co.,* 3 N. W. Rep. 643 ; *F. N. Bank* v. *O. N. Bank,* 60 N. Y. 278, 295 ; *Beardsley* v. *Richardson,* 11 Wend. 25 ; *Whitney* v. *P. C. Co.,* 9 N. E. Rep. 619 ; *Jackson* v. *Eighmie,* 10 N. Y. S. R. 359 ; *Rea* v. *Simmons,* 6 N. E. Rep. 699.) Even if respondents' clerks had assumed the custody of appellant's garment, and thus assumed the duties of a gratuitous depositary, these respondents would not have been liable, as the act would not have been binding, not being within the scope of the clerk's authority or duties of employment. (Schouler on Bail. § 51 ; Story on Agency, §§ 74, 75, 239 ; 2 Kent's Comm. 612 ; Story on Bail. §§ 55, 60 ; *Foster* v. *E. Bank,* 17 Mass. 498.)

Vann, J. The defendants are the proprietors of a retail store on Twenty-third street in the city of New York, which has a department for the sale of ready-made cloaks. On the 19th of April, 1887, the plaintiff went to their store to purchase a wrap, and, entering the cloak department and making known her business, was conducted by one of the saleswomen to a place where there were two chairs near a mirror. She sat down on one of the chairs while the clerk brought her several garments to examine, and, after looking them over for ten or fifteen minutes, she selected one to try on and went to the mirror for that purpose. A large window was open near by, and she complained of the draught, whereupon the clerk conducted her through a passage-way formed by iron frames, on which wraps were hung, to another compartment about twenty-five feet distant, where there was a mirror but no chairs. The clerk carried the new cloak, and stood in front of the mirror waiting for the plaintiff to put it on. The plaintiff carried her own cloak, which she had removed in order to try on the other, to the place where the clerk stood, and laid it on a counter about eight feet from the mirror, directly in front of another clerk who stood behind waiting upon a customer. She did not ask, and was not told, where to put her cloak, but the saleswoman who was waiting upon her, as well as the clerk behind the counter, observed her as she thus laid it down, but neither said anything. There was no other place to put the cloak. The plaintiff, after spending four or five minutes in trying on the garment, said that she would take it, and at once went to get her cloak, but it could not be found, although a careful search was made for it. Only one other customer was in either of the compartments while the plaintiff was in the store.

There was a floor-walker in the cloak department who had the same authority there as one of the defendants. It was his duty to supervise the exhibition of goods by employes; to see that things were in their places; that the clerks attended to their duties; that nothing was taken away without authority, and that customers received proper attention. He saw nothing

that transpired on this occasion, as he was in another room, but for what purpose does not appear. Two other floor-walkers were employed on that floor, and there was a detective on duty in the store, but no evidence was given as to their whereabouts when the plaintiff lost her cloak. One of the floor-walkers, when asked what arrangements were made for the protection of cloaks taken off by customers in order to try on others, answered that they "leave their garments on chairs."

The clerk who waited upon the plaintiff testified that customers, under such circumstances, placed their cloaks on chairs and where it was most convenient for them, and that she paid no attention to garments removed in order to try on others.

No notice was given to the plaintiff either directly or indirectly as to where she should put her cloak and no instructions had been given by the defendants to their clerks as to the disposition of garments removed by customers in order to try on those offered for sale. These facts were either expressly sworn to and not denied, or are permissible inferences which the trial justice, sitting without a jury, is presumed to have drawn from the evidence. The question is thus presented whether the defendants owed any duty to the plaintiff, which they omitted to discharge to her injury.

The defendants kept a store and thus invited the public to come there and trade. In one of its departments they kept ready-made cloaks for sale and provided mirrors for the use of customers in trying them on, and clerks to aid in the process. They thus invited each lady who came there to buy a cloak, to remove the one she had on and try on the one that they wished her to purchase, because the invitation to do a given act extends by implication to whatever is known to be necessary in order to do that act. It is not perceived that under the circumstances disclosed by the evidence, the obligation of the defendant would have been greater or in any respect different if one of their number had met the plaintiff on the street and had not only expressly invited her to come to the store and buy a cloak, but had also requested her to take off her wrap

and try on the one that he offered to sell her. The clerk who waited upon her stood in the place of the defendants as long as she was engaged in the line of her duties and no claim is made that she at any time exceeded her authority. Therefore, when she led the way to the second mirror and stood before it holding the new garment in her hands in readiness to help the plaintiff try it on, in legal effect one of the defendants stood there inviting her to try it on, and to lay aside her wrap for that purpose. She accepted the invitation and removed her wrap, but as she could not hold it in her hands while she tried on the other, it was necessary for her to lay it down somewhere. No place was provided for that purpose. There was not even a chair in sight. She was neither notified where to put it, nor informed that she must look out for it as it would be at her own risk whatever she did with it. She put it in the only place that was available, unless she threw it on the floor, and as she did so, in contemplation of law, the defendants stood looking at her. Under these circumstances we think that it became their duty to exercise some care for the plaintiff's cloak, because she had laid it aside on their invitation and with their knowledge and, without question or notice from them, had put it in the only place that she could. The consideration for the implied contract imposing that duty resided in the situation of the plaintiff and her property for which the defendants were responsible, and in the chance of selling the garment that she had selected. It is unnecessary for us to define the degree of care required by the circumstances, because no care whatever was exercised by the defendants. While they created the situation that required care, they made no provision for it by furnishing a safe place to deposit the property of customers, or notifying the plaintiff to look out for her cloak herself, or making rules for the government of their employes under such circumstances, or in any other way. Even the chairs on which customers were in the habit of leaving their garments were wholly wanting, and the floor-walker was absent without explanation as to the reason. As the defendants were bound to use ordinary care to keep their

premises in a safe condition for the access of business visitors, whether expressly or impliedly invited (*Coughtry* v. *Globe Woolen Co.*, 56 N. Y. 124, 126 ; *Beck* v. *Carter*, 68 id. 283 ; *Welch* v. *McAllister*, 15 Mo. App. 492 ; *Nave* v. *Flack*, 90 Ind. 205 ; *Pastene* v. *Adams*, 49 Cal. 87 ; *Learoyd* v. *Godfrey*, 138 Mass. 315), so we think they were bound to use some care for the property of the plaintiff, properly brought there and necessarily laid aside by their implied invitation in order to attend to the business in hand. They omitted to do that which " a reasonable man, guided by those considerations that ordinarily regulate the conduct of human affairs " would have done under the same circumstances, and were thus guilty of negligence.

Our attention has been called to no authority directly in point. The cases relied upon by defendants are *Carpenter* v. *Taylor* (1 Hilt. 193) ; *Rea* v. *Simmons* (141 Mass. 561) ; *Whitney* v. *Pullman Palace Car Co.* (9 N. E. Rep. 619).

In *Carpenter* v. *Taylor*, the plaintiff entered the saloon of a hotel to get refreshments between twelve and one o'clock at night and when he went out the place was being closed. He left his opera-glass behind, but it did not appear where, and the next morning when he called for it, it could not be found. As it did not appear that the defendant or any of his servants ever received, or even saw the glass, it was properly held that he was not responsible for its loss.

While *Rea* v. *Simmons* is somewhat analagous to the case at bar in its facts, the decision seems to have proceeded on a question of practice. The entire opinion consists of ten lines and states that while the case was reported to the court for its opinion upon the question of law involved, no specific questions of law are stated in the report and none appear to have been raised at the trial. It then states that the decision of the trial court upon the facts is conclusive and cites two authorities which hold that the facts found below are not open to review.

In *Whitney* v. *Pullman Palace Car Company*, the decision was simply that the plaintiff was guilty of contributory negligence, while the question whether there was any evidence

of negligence on the part of the defendant was expressly reserved.

We think that the defendants as voluntary custodians for profit to themselves, were bound to exercise some care over the plaintiff's cloak, and that on account of their absolute failure in this regard they were properly held liable by the trial court for the damages that she sustained.

The order of the General Term should be reversed and the judgment of the District Court affirmed with costs.

All concur, except BRADLEY, J., dissenting.

Order reversed and judgment affirmed.